**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RODRIGO BOLARINHO CUSTODIO,<br>Petitioner<br>v.<br>ANTONE MONIZ, *et al.*,<br>Respondents. | Civil Action No. 26-14626-MJJ |

**ORDER AND MEMORANDUM OF DECISION**

November 19, 2026

JOUN, D.J.

On October 13, 2026, Petitioner Rodrigo Bolarinho Custodio ("Petitioner" or "Custodio") filed this petition for writ of habeas corpus, [Doc. No. 1], asserting that immigration officers unlawfully arrested him without a warrant on October 9, 2026, and that he must therefore be released. Respondents oppose relief, relying principally on the Visa Waiver Program ("VWP"), 8 U.S.C. § 1187, and a final administrative removal order issued after this action began. The question is not whether an arrest that fails to satisfy 8 U.S.C. § 1357(a)(2) becomes lawful retroactively. It does not. The question is whether the asserted defect in the original arrest renders Custodio's present detention unlawful notwithstanding an intervening and unchallenged final removal order. For the reasons explained below, the Court has jurisdiction to consider the detention claim but concludes that Custodio has not shown an entitlement to release on the record presented, and therefore, the petition is DENIED.

## I. BACKGROUND

Custodio is a Portuguese national who entered the United States pursuant to the VWP and remained beyond his authorized 90-day period. He alleges that he has lived in Fall River for approximately a decade, has longstanding family, employment, and community ties, and has no criminal history. [Doc. No. 1 at ¶¶ 5–10]. The petition identifies May 18, 2016, as his entry date; the government's Form I-213 and subsequent removal order identify April 28, 2017. [Doc. Nos. 7-2, 8-1]. The discrepancy is immaterial to the issues resolved here, and I make no finding about the precise date of entry.

On September 25, 2026, Custodio was arrested and served with a Notice to Appear. [Doc. No. 7-2 at 3; I-213]. Then on October 9, 2026, Custodio was in a vehicle with co-workers on his way to a construction site when a police officer conducted a stop of the car. [Doc. No. 7-2 at 2; I-213]; [Doc. No. 1 at ¶ 10]. According to ICE's Form I-213, the police officer contacted Immigration and Customs Enforcement ("ICE") for assistance in identifying the four passengers. [Doc. No. 7-2 at 2; I-213]. An ICE deportation officer then conducted record checks, which identified Custodio as having overstayed his admission under the VWP. [*Id.*]. Based on that information, the deportation officer authorized the arrest of Custodio "without a warrant due to his likelihood of absconding." [*Id.*]. No pre-arrest immigration warrant appears in the submitted record.

The Form I-213, prepared on October 14, 2026—five days after the arrest—and signed by a different deportation officer, provides further explanation for ICE's determination. [Doc. No. 7-2 at 1–2; I-213]. Specifically, it states that ICE considered Custodio likely to abscond because he overstayed VWP admission, had remained in the United States for years without work authorization, had not registered his address with immigration authorities, and could not contest

removal before an immigration judge under the VWP. [*Id.*]. The document also identifies the date and place of arrest, the police encounter, and database inquiries. It does not describe any conduct suggesting that Custodio intended to flee or attempted to flee. Nor does it explain why officers could not first obtain a warrant. Custodio is currently being detained in Plymouth, Massachusetts. [Doc. No. 1 at ¶ 16].

Custodio filed this petition on October 13, 2026. [Doc. No. 1]. Respondents filed their initial opposition on October 16, attaching the Form I-213 and a notice of intent to issue a Final Administrative Removal Order ("FARO"). [Doc. Nos. 7, 7-1, 7-2]. On October 20, they supplemented the record with a VWP FARO digitally signed October 16 and served October 19. *See* [Doc. Nos. 8, 8-1]. The document orders Custodio removed to Portugal, states that it is administratively final, and reflects service; Respondents represent that he was afforded 48 hours to contest the notice after declining to acknowledge it. [Doc. No. 8 at 1]; [Doc. No. 8-1]. Custodio does not ask this Court to set aside that order, does not contest its present validity, and does not claim to have sought asylum or a stay of removal. [Doc. No. 9].

## II. <u>JURISDICTION</u>

At the outset, Respondents raise a jurisdictional challenge, which I address first. Section 2241(c)(3) permits a federal court to consider whether a person is "in custody in violation of the Constitution or laws or treaties of the United States." Respondents invoke 8 U.S.C. § 1252(g), which restricts review of claims arising from certain discretionary actions concerning the commencement of proceedings, adjudication of cases, or execution of removal orders. *See* [Doc. No. 7 at 2]. Petitioner, relying principally on *Kong v. United States*, argues that the Court should distinguish between a challenge to the removal order itself, and a challenge to the legal authority for detention. [Doc. No. 9 at ¶ 17]; 62 F.4th 608, 614–20 (1st Cir. 2023). I agree with Petitioner.

Judicial review of removability is a different inquiry than review of the initial legal basis for physical custody. Indeed, § 1252(g) is not to be construed as a categorical bar to judicial review of every claim involving a removal order. *Kong* holds that a claim asserting the government lacked legal authority to arrest or detain a person can be collateral to the decision to execute an order of removal and thus not barred by § 1252(g). *Id*. at 617–20. Although *Kong* involved a damages claim arising from renewed post-order detention—not a habeas petition and not detention immediately following a new removal order—its distinction between review of detention authority and review of removal discretion controls the jurisdictional inquiry here.

Here, when Petitioner was arrested, he was not subject to a removal order. Custodio challenges his arrest and physical custody rather than the substantive decision to remove him. This challenge, therefore, does not encroach on the "prosecutorial discretion" to issue the removal order, *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999), but rather focuses on the initial arrest which occurred before the removal order was issued. The Court therefore has jurisdiction to examine whether custody is legally authorized.

## III. <u>THE INITIAL WARRANTLESS ARREST</u>

The Immigration and Nationality Act authorizes an immigration officer to arrest without a warrant only if the officer has reason to believe that the person is present in violation of immigration law and "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *see also* 8 C.F.R. § 287.8(c)(2)(ii). The First Circuit has explained that the statutory "reason to believe" standard is equivalent to probable cause. *Morales v. Chadbourne*, 793 F.3d 208, 216 (1st Cir. 2015); *see also Tejeda-Mata v. Immigr. & Naturalization Serv.*, 626 F.2d 721, 725 (9th Cir. 1980) ("The phrase 'has reason to believe' [in § 1357] has been equated with the constitutional requirement of probable cause."). Unlawful presence and likelihood of escape are

separate requirements. Treating an immigration overstay, without more, as sufficient evidence of likely escape would largely erase the latter requirement. The "likely to escape" language in § 1357(a)(2) has been construed to mean "likely to evade detention by immigration officers." *Hussen v. Noem*, 822 F. Supp. 3d 944, 988 (D. Minn. 2026) (quoting *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1006–07 (N.D. Ill. 2016)); *see also United States v. Bautista-Ramos*, No. 18-cr-4066-LTS, 2018 WL 5726236, at *7 (N.D. Iowa Oct. 15, 2018) (considering factors such as whether the noncitizen was encountered at a stable place of employment or their home; the noncitizen's community ties and family's immigration status; and the likelihood officers could find the noncitizen again after the fact), *report and recommendation adopted*, 2018 WL 5723948 (N.D. Iowa Nov. 1, 2018).

Respondents' showing regarding likelihood of escape is thin. The Form I-213 offers reasons based principally on Custodio's long-term overstay and failure to register an address; it does not identify conduct showing that Custodio was evading officers, had recently moved to avoid detection, had attempted to flee, or was otherwise likely to escape before an administrative warrant could be secured. The government has not submitted a declaration from the officer who authorized the arrest explaining the particular facts then known or the anticipated delay in obtaining a warrant. A document prepared five days later can recount information known at the time of arrest; its preparation date does not itself disqualify it. But the timing reinforces the need to distinguish contemporaneous knowledge from post-arrest conclusions. On this record, Respondents have not persuasively demonstrated individualized probable cause to believe Custodio would escape before a warrant could be obtained.

Nevertheless, I need not make a definitive finding as to the legality of the October 9 arrest because, even assuming the arrest violated § 1357(a)(2) and the implementing regulation, that

premise alone does not resolve the separate question: whether Custodio is now in custody unlawfully. I assume the asserted initial defect in his favor for purposes of the remaining analysis.

## IV. PRESENT CUSTODY AND THE REQUESTED REMEDY

The record establishes that a FARO issued on October 16 and was served on October 19. [Doc. No. 8-1]. For a person whose removal order has become administratively final, 8 U.S.C. § 1231 generally governs detention during the removal period. Section 1231(a)(2) provides that the government "shall detain" the person during that period, which ordinarily commences when the order becomes administratively final. 8 U.S.C. § 1231(a)(1)(B)(i), (a)(2); *see Johnson v. Guzman Chavez*, 594 U.S. 523, 531–33 (2021). The FARO is facially an administratively final order issued under the VWP framework. *See* 8 U.S.C. § 1187(b)(2); 8 C.F.R. § 217.4(b). Nothing in the record establishes that the order has been stayed, vacated, or rendered invalid by a procedural defect. I must accordingly conclude that, on this record, § 1231 supplies an independent statutory basis for Custodio's continued detention, regardless of the legality of his initial arrest.

That conclusion does not retroactively validate Custodio's October 9 arrest or establish that the government lawfully detained Custodio at every moment before the FARO issued. Indeed, the seven-day gap between his arrest and the issuance of the FARO—and the ten-day gap before its service—distinguish this case from those involving an existing or same-day reinstated removal order. Nevertheless, even assuming the initial arrest was unlawful, that defect does not necessarily entitle Custodio to habeas relief where the government has since established a valid independent legal basis for detention. The Supreme Court has recognized that an unlawful arrest does not itself bar subsequent lawful immigration proceedings and that a person's identity is not suppressible as the fruit of an unlawful arrest. *See Immigr. & Naturalization Serv. v. Lopez-Mendoza*, 468 U.S.

1032, 1039–40 (1984). I do not decide what non-habeas relief, if any, might follow from an unlawful arrest.

Two recent decisions in this District illustrate the difference between the legality of an arrest and entitlement to release from present detention. In *Moreno Sam v. Wesling*, No. 26-cv-14325-NMG, slip op. at 2–3 (D. Mass. Oct. 8, 2026), the court denied habeas relief notwithstanding an assumed arrest defect because the petitioner's prior removal order was reinstated on the day he was arrested. In *Sapatanga Dumaguala v. Wesling*, No. 26-cv-13927-LTS, slip op. at 4–6 (D. Mass. Sept. 22, 2026), the court similarly declined to order release where an undisputed, same-day reinstatement independently supported custody; the court emphasized the limited record concerning the asserted arrest defect and cited *Arias v. Rogers*, 676 F.2d 1139, 1142–44 (7th Cir. 1982), as persuasive support. Neither decision binds this Court, and neither involved a FARO first issued after the habeas petition. Their reasoning is nonetheless persuasive insofar as the appropriate relief turns on the legality of current custody, not solely the circumstances of the initial seizure.

Custodio points to persuasive district-court decisions granting release following unlawful warrantless immigration arrests. *See, e.g.*, *De La Rosa Izaguirre v. Blanche*, No. 26-cv-2911 (PKC), 2026 WL 2023200 (E.D.N.Y. July 13, 2026); *Cartagena Jaco v. Blanche*, No. 26-cv-04798 (JPO), 2026 WL 1786007 (S.D.N.Y. June 22, 2026); *Linares Munoz v. Roberts*, No. 26-cv-01181-SPC-DNF, 2026 WL 1172883 (M.D. Fla. Apr. 30, 2026); *Walther Ademir A. S. v. Blanche*, No. 26-cv-2804 (LMP/SGE), 2026 WL 1734906 (D. Minn. June 16, 2026). Those decisions take seriously the rule that federal officials must comply with limits on immigration-arrest authority and, in some instances, reject post-arrest actions as cures for unlawful detention. I agree that a later order cannot validate an earlier unlawful arrest. It does not follow, however, that release is required

where a separate, facially valid, administratively final VWP removal order now authorizes detention under § 1231. I find the distinction between retrospective illegality and present legal authority more consistent with § 2241(c)(3), *Kong*'s limited jurisdictional holding, and the mandatory language of § 1231(a)(2). I do not adopt a categorical rule that a later order always defeats a habeas challenge; a petitioner may show that the later process itself is defective, that the asserted legal authority does not apply, or that continued detention has become constitutionally excessive. None of those grounds has been established here.

Finally, Custodio requests an injunction against transfer outside Massachusetts. The petition alleges a prospective transfer to Louisiana but supplies no concrete evidence concerning its timing, purpose, or interference with a particular hearing or protected access to counsel. Because the present petition does not establish a right to release and does not develop a separate legal basis for a permanent geographic restriction, that request is denied.

## V. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus, [Doc. No. 1], is DENIED. The request for an injunction prohibiting transfer from Massachusetts is also DENIED.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge